UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

EDGAR T. NUMRICH,

          Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,

          Defendant.

Case No.: 3:11-CV-1254-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Edgar T. Numrich ("Numrich") filed this action against defendant JPMorgan Chase Bank, N.A. ("JPMorgan"), seeking to recover damages he suffered when JPMorgan attempted to collect on a debt Numrich owed Washington Mutual Bank (the "Bank") after JPMorgan entered into an agreement to purchase the Bank. In the *pro se* complaint filed on October 18, 2011, ("Complaint") Numrich alleges JPMorgan fraudulently represented it had the authority to collect on

the debt. Numrich asserts claims for common-law fraud and for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") based on the predicate acts of mail and wire fraud. JPMorgan moves to dismiss this action in deference to a similar state action between the parties that has been pending for nearly a year. Alternatively, JPMorgan moves to dismiss the complaint for failure to state a claim under FED. R. CIV. P. 12(b)(6), for failure to provide a short and plain statement of the claim under FED. R. CIV. P. 8(a), and for failure to allege fraud with the particularity required by FED. R. CIV. P. 9(b). The court finds that Numrich has failed to allege he was ignorant of the falsity of the misrepresentations or that he relied on the misrepresentations to his detriment as required under both claims, and that Numrich is unable to cure these deficiencies by amendment. Accordingly, the court dismisses the Complaint with prejudice.

*Background*

Numrich alleges in the Complaint that he opened a personal checking account ("Account") with the Bank in December 2003. (Compl. ¶ 13.) At some point, Numrich overdrew the Account and placed it in a negative balance. (Compl. ¶ 14.) In November 2005, the sum of $536.16 was credited to the Account as a "deposit" and "Total Amount Due Washington Mutual". (Compl. ¶ 14.) Numrich alleges the final account statement for the Account, which was dated November 22, 2005, showed an ending balance of zero. (Compl. ¶ 14.) However, Numrich later alleges the Bank "charged off" the Account. (Compl. ¶ 40.) The Bank did not make any claim against Numrich with regard to the Account after December 8, 2005. (Compl. ¶ 90.)

On September 25, 2008, the United States Office of Thrift Supervision seized the Bank and placed it into receivership under the Federal Deposit Insurance Corporation ("FDIC"). (Compl. ¶ 16.) The same day, the FDIC sold the Bank to JPMorgan. (Compl. ¶ 20.) Numrich alleges that to

the extent the Bank carried the Account as a liability, it was not purchased by JPMorgan as part of the purchase of the Bank, or otherwise. (Compl. ¶ 56.)

JPMorgan reopened the Bank branch offices the next day under the "Chase" name. (Compl. ¶ 20.) Washington Mutual Inc., the holding company that previously owned the Bank ("Mutual"), filed for Chapter 11 bankruptcy on September 26, 2008, as well. (Compl. ¶ 22.) Numrich alleges that neither the sale nor the bankruptcy have been fully resolved and closed, that JPMorgan did not purchase the unsecured debt or equity claims of the Bank, that JPMorgan concedes it did not become the Bank's successor in interest, and that the FDIC has remained in control of the Bank since its initial closure. (Compl. ¶¶ 21-23, 93-95.) He further asserts that JPMorgan has wrongfully received billions of dollars in tax refunds earned by the Bank and Mutual from 2003 to the present and will receive additional tax refunds, tax credits, and other tax benefits through the Bank and Mutual. (Compl. ¶¶ 20, 29, 35-39.)

Beginning in April 2009, various collection agencies contacted Numrich in attempt to collect a debt on behalf of JPMorgan. (Compl. ¶ 62). Numrich consistently denied having any relationship with JPMorgan or owing JPMorgan the sum or $536.16, or any lesser amount. (Compl ¶ 62.) Between March and August of 2010, Numrich opened three checking accounts (two personal and one business) with JPMorgan ("JPMorgan Accounts"). (Compl. § 63.) Between August 5 and August 10, 2010, JPMorgan, without the authorization of Numrich, "swept" all funds out of the JPMorgan Accounts, in the total amount of $143.41, listing the transactions as a "withdrawal to another account". (Compl. ¶ 65.) Numrich closed the JPMorgan Accounts on August 10, 2010. (Compl. ¶ 66.) Numrich continued to receive communications from JPMorgan, through various collections agencies, attempting to collect the sum of $392.75 on behalf of JPMorgan and Numrich

continued to deny the existence of the obligation. (Compl. ¶ 67.)

Numrich asserts that JPMorgan made numerous fraudulent representations to him while attempting to collect on the Account and that he relied on such representations to his detriment. (Compl. ¶¶ 70-74.) He also alleges that JPMorgan conspired with one or more enterprises and engaged in at least two acts of mail and/or wire fraud while attempting to collect on the Account, thereby engaging in a pattern of racketeering activity in violation of RICO. (Compl. ¶¶ 75-87.) Numrich seeks economic damages in the amount of $100,000, non-economic damages in the amount of $1,000,000, and an injunction prohibiting JPMorgan from engaging in any further attempt collect on the Account. (Compl. ¶ 137, 143.)

JPMorgan moves the court to dismiss this action in deference to a similar state action that has been pending between it and Numrich for nearly a year. Alternatively, JPMorgan moves to dismiss the complaint for failure to state a claim under FED. R. CIV. P. 12(b)(6), for failure to provide a short and plain statement of the claim under FED. R. CIV. P. 8(a), and for failure to allege fraud with the particularity required by FED. R. CIV. P. 9(b).

*Preliminary Procedural Matter*

In support of the motion to dismiss based on the pendency of related litigation, JPMorgan asks the court to take judicial notice of numerous documents. In the initial motion for judicial notice, JPMorgan seeks judicial notice of the court docket sheet for the case of *Edgar T. Numrich v. JP Morgan Chase Bank, N.A.*, Case No. 1102-01673, filed in the Circuit Court for the State of Oregon for the County of Multnomah (the "State Action"), and various documents filed in the State Action, including the complaint, two summary judgment motions, a motion for entry of limited judgment, and a motion for abatement, along with the opposition and reply briefs and supporting

documentation, and the court orders on all but the last motion for summary judgment. In a supplemental motion for judicial notice, JPMorgan offers the court order on the last motion for summary judgment in the State Action for consideration by the court. Similarly, Numrich asks the court to take judicial notice of a number of court documents. In his second[1] request for judicial Notice, Numrich seeks judicial notice of two documents filed in the matter of *In Re Checking Account Overdraft Litigation*, Case No. 1:09-MD-02036-JLK, filed in the United States District Court for the Southern District of Florida ("Overdraft Litigation"), including the Notice of Anticipated Settlement and the Order Suspending Revised Scheduling Order Pending Filing of Anticipated Settlement Agreement, as well as an opinion of the United States Supreme Court issued in *Boyle v. United States*, No. 07-1309. In his third request for judicial notice, he asks the court to consider a brief in support of his amended motion to compel filed in the State Action. Finally, in his fourth request, Numrich seeks judicial notice of a complaint for violation of federal securities laws filed in the United States District Court for the Southern District of New York in *Saratoga Advantage Trust – Financial Services Portfolio v. JPMorgan Chase*, No. 12-CV-3879 (the "Securities Action"). Neither party objects to the court taking judicial notice of the existence of these court documents or the content of those documents, but they do object to the court taking judicial notice of the contents of the documents as true or legally established.

The parties are offering materials outside of the pleadings in support of, or in opposition to, a motion to dismiss. In general, material outside the pleadings may not be considered in ruling on

---

[1] Numrich included a request for judicial notice of a recent decision by a federal bankruptcy court in his response to JPMorgan's motion for extension of time filed on March 2, 2012. On March 6, 2012, the court indicated that it would consider the decision when determining the merits of JPMorgan's motion to dismiss.

Page 5 - OPINION AND ORDER                                                                  {SIB}

a motion to dismiss unless the motion is treated as one for summary judgment and the parties are "given reasonable opportunity to present all materials made pertinent to such motion by Rule 56." *Jacobson v. AEG Captial Corp.*, 50 F.3d 1493, 1496 (9th Cir. 1995). There are two exceptions to this rule. First, a court may consider "material which is properly submitted to the court as part of the complaint." *Lee v. County of Los Angeles*, 240 F.3d 754, 774 (9th Cir. 2001). A document is not "outside" the complaint if the complaint specifically refers to the document, its authenticity is not questioned, and the plaintiff's complaint necessarily relies on it. *Id.* at 774. When the plaintiff fails to introduce a pertinent document as part of his pleading, the defendant may introduce the exhibit as part of his motion attacking the pleading. *Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1998).

The second exception is that under Rule 201 of the Federal Rules of Evidence, the court may take judicial notice of "matters of public record." *Lee*, 240 F.3d at 774. Rule 201 allows judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." A court may take judicial notice of complaints and briefs filed in another case to determine what issues were before that court and were actually litigated. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). However, a court may not take judicial notice of facts presented in those documents or in court opinions for the purpose of considering those facts to be established in the case currently before them. *Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003)(citing *M/V American Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983)("As a general rule, a court may not take judicial notice of proceedings or records in another case so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause before them.")).

The state and federal court documents offered by JPMorgan and Numrich are undeniably matters of public record appropriate for consideration by the court for the limited purpose of determining what issues are before the court in the State Action, the Overdraft Litigation, and the Securities Action. Accordingly, the court will take judicial notice of the claims for negligence and breach of contract based on the Bank's "high-to-low" sequencing of draft and debit charges asserted by Numrich in the State Action, and the arguments made by the parties in motion practice, but will not take judicial notice of the factual assertions contained therein, or in the court orders. Similarly, the court will take judicial notice that the Overdraft Litigation and the Securities Action involve claims against JPMorgan relating to the propriety of JPMorgan's overdraft policies and representations regarding losses and risks of loss to investors, and will consider the opinion of the United States Supreme Court filed in *Boyle v. United States*, No. 07-1309, but will not take judicial notice of the facts contained in these federal filings. The court grants the parties' respective requests for judicial notice of these court documents and will consider the contents of the state and federal court documents, where relevant, in ruling on the pending motion to dismiss.

*Legal Standard*

A well-pleaded complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2)(2011). A federal claimant is not required to detail all factual allegations; however, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* While the court must assume that all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving

party, it need not accept as true any legal conclusion set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). Additionally, a plaintiff must set forth a plausible claim for relief – a possible claim for relief will not do. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009)(quoting *Iqbal*, 129 S. Ct. at 1949).

In cases involving a plaintiff proceeding *pro se*, the court construes the pleadings liberally and affords the plaintiff the benefits of any doubt. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992)("[F]ederal courts liberally to construe the 'inartful pleadings' of pro se litigants."). In other words, courts hold *pro se* pleadings to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). In addition, a *pro se* litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. *Karim-Panahi*, 839 F.2d at 623-624.

*Discussion*

I. Duplicate Actions

JPMorgan moves to dismiss this action because there is another action pending between the parties on the same facts in state court. JPMorgan argues that the controlling issue in both the State Action and this case is the right of JPMorgan to collect on the Account. Numrich disagrees and asserts that the State Action is based on the Bank's "high-to-low" sequencing of draft and debit charges and has nothing to do with JPMorgan. Numrich contends the facts supporting the allegations in the Complaint were unknown to him at the time he filed the State Action and the state

court lacks jurisdiction over the federal claims at issue here.

JPMorgan relies on the federal first-to-file rule and the state rule found in OR. R. CIV. P. 21(A)(3). Neither rule is applicable to situation here, where the pending cases are in both state and federal court, and JPMorgan seeks to dismiss the federal, not the state, action.

The federal first-to-file rule is a "generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties has already been filed in another district." *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-5 (9th Cir. 1982). The Ninth Circuit explained that the dictates of sound judicial administration indicate that generally "when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action." *Id.* at 95. Judge Jelderks of this court refused to apply the first-to-file rule where the initial complaint was filed in California state court, finding that application of the rule is limited to multiple parallel actions filed in different federal courts. *Barhyte Specialty Foods, Inc. v Accutek Packaging Equip., Co., Inc.*, 2007 WL 2463244, at *5 (D. Or. Aug 28, 2007); *see also Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976)(recognizing the "difference in general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction" and refusing to apply rule that duplicative litigation between federal district courts should be avoided in state-federal context). Judge Jelderks noted that the parties did not cite, and he was unable to find, any cases "supporting the conclusion that federal courts generally decline to assert jurisdiction based on the pendency of similar actions in state courts." *Id.* He explained that:

[i]nstead, "the pendency of an action in the state court is no bar to proceedings

> concerning the same matter in the Federal court having jurisdiction," *McClellan v. Carland*, 217 U.S. 268, 282 (1910), and federal courts recognize a "virtually unflagging obligation . . . to exercise the jurisdiction given them. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976).

2007 WL 2463244, at *5. Judge Jelderks did recognize the judicially created abstention doctrine which allows dismissal of a federal action in light of the earlier filing of a state action under exceptional circumstances, such as when the action requires resolution of unsettled issues of state law or where the dispute involves important state regulatory concerns, but then found that none of the circumstances applied to the commercial dispute pending before him. *Id.*

This court finds Judge Jelderks's reasoning and conclusions to be sound and adopts them as its own. The first-to-file rule does not apply to this action as the initial complaint was filed in state, not federal court. Also, Numrich asserts claims for common law fraud and violations of federal RICO provisions. Nothing in the Complaint implicates unsettled issues of state law or important state regulatory concerns. Accordingly, the abstention doctrine does not apply here, either.

Oregon allows for the dismissal of an action when "there is another action pending between same parties for the same cause." OR. R. CIV. P. 21(A)(3) (2011). All of the cases relied on by JPMorgan in support of the argument that this state rule applies here involved two state court actions. JP Morgan has not cited, and this court has not been able to find, any cases in which a federal court has dismissed a federal action in light of the pendency of a related state action under this state rule. In light of the clear mandate that federal courts should retain jurisdiction unless important or unsettled state issues are raised, and in the apparent absence of any case law to the contrary, this court finds that OR. R. CIV. P. 21(A)(3) does not divest this court of jurisdiction over Numrich's claims for fraud and RICO violation despite the fact that a related action existed in the

state court at the time this action was filed.

JPMorgan's motion to dismiss for lack of jurisdiction under the first-to-file rule and OR. R. CIV. P. 21(A)(3) is denied. This is not to say, however, that this court would not consider the doctrines of claim or issue preclusion in the future should the state court rule on any matter relevant to the issues or claims before this court in light of the fact that Numrich could have asserted his fraud and RICO claims in the State Action. *See Tafflin v. Levitt*, 493 U.S. 455, 799 (1990)("[W]e hold that state courts have concurrent jurisdiction to consider civil claims arising under RICO.").

II. Fraud Claim

JPMorgan moves to dismiss Numrich's fraud claim arguing that he has failed to allege the prima facie elements of the claim, that the claim is barred by the applicable two-year statutes of limitation, and that Numrich has failed to provide a "short and plain" statement of his claim in violation of FED. R. CIV. P. 8. In the alternative, JPMorgan asserts that Numrich failed to allege his fraud claim with the particularity required by FED. R. CIV. P. 9(b).

In Oregon, the prima facie elements of a common-law fraud claim are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that the representation should be acted upon by the listener in the manner reasonably contemplated; (6) the listener's ignorance of the representation's falsity; (7) the listener's reliance on the truth of the representation; (8) the listener's right to rely thereon; and (9) the listener's consequent and proximate injury. *Webb v. Clark*, 274 Or. 387, 391 (1976). "If any one of these elements is not established by clear and convincing evidence, plaintiff's case must fail." *Id.* "Clear and convincing evidence means that the truth of the facts asserted is highly probable. *Coy v. Starling*, 53 Or. App. 76, 80 (1981).

Numrich generally alleges that JPMorgan made false representations which were material, JPMorgan was aware of the falsity of such representations and intended Numrich to rely on the representations, and Numrich was ignorant of the falsity and relied on the truth of the representations to his detriment. However, these allegations are nothing more than mere labels and conclusions – a formulaic recitation of the elements of the *prima facie* elements of a claim for fraud – and are insufficient unless supported with factual allegations sufficient to raise Numrich's right to relief above a speculative level.

Viewing the allegations of the Complaint as a whole, it is evident that Numrich's fraud claim is based on JPMorgan's representation that it had the authority to collect on the Account. Numrich alleges that JPMorgan did not have such authority for various reasons, including the improper purchase of the Bank by JPMorgan based on JPMorgan's receipt of billions of dollars of tax refunds, tax credits and other tax benefits paid to the Bank or Mutual in 2008 and 2010, which were unearned by JPMorgan; the incomplete status of the purchase of the Bank and the bankruptcy of Mutual, which Numrich alleges have not been completed or otherwise resolved; and the failure of JPMorgan to obtain ownership of the Bank's liabilities, including the Account, as part of the purchase of the Bank, or otherwise. Accordingly, while Numrich does not specifically identify the false representations made by JPMorgan he is relying on in support of his fraud claim, the only false statement supported by the factual allegations in the complaint is that JPMorgan owned the Account and had the right to collect the amount written off by the Bank, which was made by JPMorgan to Numrich through the collection agency in an attempt to collect on the Account. This finding is also justified by Numrich's opposition brief, in which he represents that he could not have brought the fraud claim until after he became aware that the purchase of the Bank by JPMorgan never closed,

that the purchase did not have anything to do with the Account or the JPMorgan Accounts, and that the FDIC has never exited receivership of the Bank. (Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss at 26.) All of this "newly discovered" information upon which Numrich based his fraud claim relate solely to JPMorgan's ownership of, and authority to collect on, the Account. Accordingly, the only false statement supported by the Complaint and Numrich's briefing relates to JPMorgan's ownership of, and authority to collect on, the Account.

Assuming that JPMorgan did not have authority to collect on the Account and that JPMorgan, through its agents, falsely represented such authority to Numrich with the intent that Numrich act on the misrepresentations, the factual allegations found in the Complaint establish that Numrich was not ignorant of the falsity of the representations and did not rely on the misrepresentations in any way. Numrich specifically alleges that when he began receiving demands from various collection agencies attempting to collect on the Account for the benefit of JPMorgan, he denied the claims, explained that he had no banking relationship with JPMorgan, indicated that JPMorgan's representation that it was a creditor was false, and demanded that the agencies cease communication with him. Even after Numrich opened, and then closed, the JPMorgan Accounts, Numrich continued to deny the existence of any valid claim by JPMorgan against him. Numrich further alleges in the Complaint that none of the claims made by the collection agencies "were relevant to, or agreed obligations of, any banking contract or other activity between Plaintiff and Defendant" again rejecting any authority of JPMorgan to collect on the Account. (Compl. ¶ 68.) Additionally, it is clear that Numrich did not voluntarily make any payments to JPMorgan, or take any other action, in reliance on the representations that JPMorgan owned the Account or otherwise had the authority to collect on the Account.

Numrich has failed to allege the facts necessary to support a *prima facie* claim for fraud. Specifically, Numrich's allegations that he denied JPMorgan's allegedly false statements that it had the right to collect on the Account, or that he had any obligations to JPMorgan at all, and his failure to allege what actions he took in reliance on the false statements, make it clear that he is unable to establish that he was ignorant of the statement's falsity or that he relied on the truth of the representation. Accordingly, Numrich's fraud claim is dismissed.²

The court is aware of its obligation to afford a *pro se* plaintiff the opportunity to amend a complaint, but such opportunity is appropriate only where amendment would cure the deficiencies in the complaint. Here, in light of the allegations that establish that Numrich was aware of the falsity of the representations and refused to rely on the representations, Numrich can not amend the Complaint to cure the deficiencies. Numrich's fraud claim is dismissed with prejudice and without leave to amend.

III. RICO Claim

JPMorgan moves to dismiss Numrich's RICO claim arguing that he has failed to allege the *prima facie* elements of the claim and has failed to provide a "short and plain" statement of in his claim in violation of FED. R. CIV. P. 8. In the alternative, JPMorgan asserts that Numrich fails to allege the fraud element of his RICO claim with the particularity required by FED. R. CIV. P. 9(b).

RICO "provides a private right of action for treble damages to '[a]ny person injured in his business or property by reason of violation' of the Act's criminal prohibitions." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 641 (2008). The civil cause of action is codified at 18 U.S.C. §

---

²In light of the court's determination that Numrich failed to allege a *prima face* claim for fraud, JPMorgan's alternative statute of limitations and declaratory judgment arguments need not, and will not, be addressed.

1964(c), which reads:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . .

*Id.* "The elements of a civil RICO claim are simple enough: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's 'business or property.'" *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996)(quoting 18 U.S.C. §§ 1964(c), (1962(c); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

Numrich alleges that JPMorgan and the collection agencies engaged in racketeering activity when they "mailed, or directed and caused to be mailed by others, bank statements and letters demanding payments of unlawful claims," and "entered, or caused to be entered, telecommunications, including by use of the internet, to enter and record unlawful seizure and claim to Plaintiff's money deposits with Defendant." (Compl ¶¶ 78-9.) Accordingly, Numrich is alleging that JPMorgan engaged in the predicate acts of mail fraud and wire fraud in attempting to collect the amounts due on the Account, including the involuntary transfer of the $143.41 in the JPMorgan Accounts.

The predicate acts of mail and wire fraud require a showing that the defendant: "(1) engaged in a scheme or artifice to defraud; (2) used or caused the use of the mails or wires in furtherance of the scheme; and (3) had specific intent to defraud. *United States v.Sullivan*, 522 F.3d 967, 974 (9th Cir. 2008)(citing U.S.C. §§ 1341, 1343). "The gravamen of the offense is the scheme to defraud." *Bridge*, 553 U.S. at 647. Allegations of wire or mail communications that further the essential part of the underlying scheme are sufficient even when the communications themselves do not contain

false information. *Id.* (citing *Schmuck v. United States*, 489 U.S. 705, 712, 715 (1989)). Additionally, allegations that a plaintiff relied on a defendant's alleged misrepresentations are not necessary where the RICO scheme is based on misrepresentations made to, and detrimental reliance on such representations by, a third party. *Bridge*, 553 U.S. at 656-59. However, a plaintiff asserting a RICO claim must show that someone, either themselves or a third party, relied on the misrepresentations and that such reliance caused plaintiff's injury. *Martinelli v. Petland, Inc.*, 274 F.R.D. 658, 661 (D. Az. 2011)(quoting *Bridge*, 553 U.S. at 658-9)("The 'complete absence of reliance [will] prevent [Plaintiffs] from establishing proximate cause.'").

JPMorgan asserts that if the court finds Numrich has failed to state a viable claim for common-law fraud, the court should dismiss the RICO claim for failing to allege actionable predicate acts. The court has found that Numrich's fraud claim must be dismissed because the allegations in the Complaint establish that Numrich knew the statements were false and did not rely on the truth of the statements to his detriment. Numrich does not allege that JPMorgan or its agents made false statements to anyone other than Numrich in their attempt to collect on the Account. Therefore, Numrich's RICO claim is necessarily based on false statements made by JPMorgan, through its agents, to Numrich. Because Numrich's RICO claim relies solely on false statements made to him, and not to a third party, Numrich must establish that he relied on the false statements. This court's finding that Numrich did not rely on the misrepresentations is fatal to his RICO claim based on the predicate acts of mail and wire fraud. As noted above, Numrich is unable to cure this deficiency. Accordingly, his RICO claims must be dismissed with prejudice.

*Conclusion*

JPMorgan's requests (#23 and #45) and Numrich's requests (#48, #52, and #56) for judicial

notice are GRANTED with regard to the contents of, but not the factual assertions contained in, the state and federal court documents submitted to the court. JPMorgan's motion (#21) to dismiss is GRANTED with prejudice and without leave to amend.

DATED this 30th day of May, 2012.

JOHN V. ACOSTA
United States Magistrate Judge